UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

WALTER GOUDY,                          )
                                       )
                Plaintiff,             )
                                       )
        vs.                            )          1:12-cv-00161-SEB-TAB
                                       )
RODNEY J. CUMMINGS, *in his individual* )
*capacities as an Anderson police detective* )
*and as a Madison County prosecutor*,   )
STEVE NAPIER, *in his individual capacity* )
*as an Anderson police detective*, CITY OF )
ANDERSON, *an Indiana municipality*, and )
THE STATE OF INDIANA, *for*             )
*indemnification purposes only*,        )
                                       )
                Defendants.            )

**ORDER ADDRESSING PENDING MOTIONS**

Although Walter Goudy no longer resides within the State of Indiana, he is no

stranger to our federal or state courts.   He was twenty-five years old when police

detectives first arrested him in connection with a fatal automobile shooting in Anderson,

Indiana.   Nearly two decades later, he seeks redress of numerous alleged injuries

stemming from that tragic event and the ensuing prosecution, to wit:   "his loss of liberty,

. . . his job and future employment opportunities, pecuniary loss, and the loss of his society

and companionship with his friends and family."   Compl. ¶ 13.   His lawsuit is presently

before the Court on two pending motions:   (1) the Motion to Dismiss [Docket No. 15],

filed April 30, 2012 by Defendants Rodney Cummings (in his capacity as Madison County

Prosecutor) and the State of Indiana; and (2) the Motion for Partial Judgment on the Pleadings [Docket No. 34], filed July 18, 2012 by Defendants Rodney Cummings, Steve Napier, and the City of Anderson (collectively, "City Defendants").   For the reasons set forth in this entry, we <u>GRANT IN PART</u> and <u>DENY IN PART</u> the Motion to Dismiss and <u>GRANT IN PART</u> and <u>DENY IN PART</u> the Motion for Partial Judgment on the Pleadings.

### Factual Background

The instant lawsuit has been pending before this court since February 6, 2012, but the factual underpinnings of Mr. Goudy's claims date back to 1993.   During the early morning hours of October 2, 1993, Marvin McCloud was shot while driving his vehicle in Anderson, Indiana.   Compl. ¶ 30.   At the time of the skirmish, McCloud was transporting two passengers:   Damon Nunn and Jill Barclay.   Nunn was also wounded in the skirmish, but he survived; McCloud died later that day from his injuries.   *Id.* ¶¶ 31-32.

On February 5, 1994, Cummings and Napier informed Jill Barclay and Carlotta Barclay[1] that the City of Anderson Police[2] had a suspect for the McCloud murder in custody and asked her to visit the station to identify the individual.   Compl. ¶¶ 37-38.   Jill Barclay was instructed to look through a one-way mirror "to determine if she recognized" the individual on the other side of the glass.   *Id.* ¶ 38.   She identified Mr. Goudy—the only person in the room adjoining the one-way mirror—"as being involved in the shooting."   *Id.* ¶ 39.   Soon afterward, Cummings and Napier conducted a lineup

---

[1] Carlotta Barclay, Jill's cousin, also witnessed the McCloud shooting.   Compl. ¶ 37.
[2] As of that date, Cummings and Napier were both employed by the City of Anderson as police detectives.

2

consisting of Mr. Goudy and five Madison County Jail inmates.   Mr. Goudy alleges that "Jill Barclay ha[d] already had her identification tainted[3] by the original show-up" and that Carlotta Barclay was unable to identify anyone in the lineup.   *Id.* ¶¶ 43, 45.   Based on the information provided to them by Jill and Carlotta Barclay, Cummings and Napier obtained a warrant to search Mr. Goudy's home and arrest Mr. Goudy in order to perform additional lineups.   *Id.* ¶ 46.   The detectives arrested Mr. Goudy that same day and subsequently conducted several other physical lineups before other eyewitnesses to the McCloud shooting.   *Id.* ¶¶ 48-50.   For "reasons . . . which are too detailed and numerous to set forth in th[e] complaint," Mr. Goudy characterizes these lineups as "impermissibly and unduly suggestive."   *Id.* ¶ 53.

After these investigatory proceedings, Madison County Prosecutor William Lawler, Jr. filed murder and attempted murder charges against Mr. Goudy.   Compl. ¶ 2.   Mr. Goudy was remanded to the Madison County Jail until May 16, 1994, when Prosecutor Lawler dismissed the charges and ordered his release from custody.   *Id.* ¶ 54.   To Mr. Goudy's dismay, his newfound freedom was nearly as short-lived as the remainder of Prosecutor Lawler's tenure.   Lawler lost the 1994 Madison County prosecutorial election to Cummings, who assumed office on January 1, 1995.   Cummings re-filed charges against Mr. Goudy on April 7, 1995—not only the original charges of murder and attempted murder, but also charges of attempted robbery and attempted carjacking.   *Id.* ¶¶

---

[3] Mr. Goudy also asserts that prior to Jill Barclay's departure from the station, Cummings and Napier became aware that Jill Barclay knew the other four individuals in the lineup.   Compl. ¶ 44.

3

57-58, 63.   Law enforcement officers arrested Mr. Goudy on April 11, 1995 and

transported him back to Madison County to answer the charges.   *Id.* ¶ 64.

Mr. Goudy stood trial in the Madison Superior Court in the fall of 1995.[4]   The

prosecution's case-in-chief included testimony from five eyewitnesses:   Damon Nunn, Jill

Barclay, Jackie Barclay, LaTonya Young, and Kaidi Harvell.   Nunn and Jill Barclay

described their respective positions in McCloud's vehicle and told the jury that McCloud

had picked up Jill Barclay from "a parking lot near an after-hours hangout."   Compl. ¶ 74.

They both testified that as McCloud was leaving the parking lot, Mr. Goudy and "a shorter

accomplice" approached the vehicle on either side and fired shots.   *Id.* ¶ 75.   According

to Nunn, Mr. Goudy was between five feet eight and five feet ten inches tall, had an "Afro"

hair style covered by a cap, and wore a "brown or beige corduroy" jacket.   Jill Barclay

testified that Mr. Goudy wore a "dark sweatshirt."   *Id.* ¶¶ 77-78.   However, both Nunn

and Barclay identified Mr. Goudy as the man on the passenger's side of McCloud's vehicle

and noted that they had seen him earlier that night (during the evening hours of October 1,

1993) at a club called the Oasis.   *Id.* ¶¶ 76, 79.

Jackie Barclay and LaTonya Young provided testimony describing their

observation of the McCloud shooting from across the street.   These witnesses had also

seen Mr. Goudy at the Oasis on the evening of October 1, 1993.   Compl. ¶¶ 79-80.   At the

time of the shooting, both women were standing outside the "after-hours hangout" where

---

[4] Because of his substantial role in the pretrial proceedings, Cummings was asked to (and
did) recuse himself from the case.   Compl. ¶ 68.

McCloud arrived in the parking lot to pick up Jill Barclay.   Jackie Barclay testified that she saw Mr. Goudy and another man approach McCloud's vehicle.   She told the jury that Mr. Goudy was approximately six feet tall, that he wore "a dark jacket, dark pants, or jeans," and that he wore his hair in braids "partially covered by his hood."   *Id.* ¶ 84.   She also stated that the other man (the "shorter accomplice" noted above), who approached the driver's side of the vehicle, had no facial hair and wore a "brown uniform."   *Id.* ¶ 85.   By contrast, Young testified that Mr. Goudy was the perpetrator on the driver's side of McCloud's vehicle.   Young estimated that Mr. Goudy was five feet eight inches tall and noted that he had "braids and [a] ponytail and wore no hat or hood."   *Id.* ¶ 86.

The remaining key eyewitness, Kaidi Harvell, was one of Mr. Goudy's roommates. Harvell asserted that he had consented to testify in exchange for immunity, but not pursuant to any other deal with the prosecutor's office.   In 1997, he pled guilty to assisting a criminal and was sentenced to serve two years in prison.   *Id.* ¶¶ 92, 94.   At Mr. Goudy's trial, Harvell told the jury that he, Romeo Lee, Lamont Thomas,[5] and Mr. Goudy drove from Indianapolis to Anderson on October 1, 1993 for a night of bar-hopping.   Compl. ¶ 88.   He further stated that Mr. Goudy and Lee intended to steal McCloud's car that evening.   To effectuate their scheme, the men planned to part company; while Harvell and Thomas drove around the block, Mr. Goudy and Lee would go to the Oasis and the "after-hours hangout," where they would eventually steal the car.   *Id.* ¶ 89.   Harvell testified that Mr. Goudy was wearing a "brown prison coat," a black cap, and gloves.   The

---

[5] Lee and Thomas are Mr. Goudy's brothers.   Compl. ¶ 88.

linchpin of his testimony, however, was his account of the two shooters in relation to McCloud's car.   According to Harvell, Mr. Goudy shot into the driver's side of the vehicle, and Lee shot into the passenger's side.   *Id.* ¶ 90-91.

Not surprisingly, Mr. Goudy's narrative of the evening in question differs from the foregoing accounts.   Several alibi witnesses testified at trial that Mr. Goudy was in Indianapolis at the time of the McCloud shooting and, therefore, could not have been in Anderson.   Specifically, they told the jury that Mr. Goudy was hosting a party that night—a detail they remembered because it had been the weekend of the Circle City Classic in Indianapolis.   Compl. ¶¶ 96-97.   Mr. Goudy's understanding of Harvell's testimony is also a point of contention; he alleges that, "[i]n fact, Harvell was testifying pursuant to a deal with [Cummings's] office, and Cummings knew it, but failed to disclose this information to [Mr. Goudy] and his attorney."   *Id.* ¶ 93.

Some evidence in the government's possession was not introduced at Mr. Goudy's trial.   Notably, Lee's pre-trial confession to the shooting was stricken from the record when he attempted to testify on Mr. Goudy's behalf, was denied immunity, and subsequently invoked his Fifth Amendment right against self-incrimination.   Compl. ¶ 99. The government also had three police reports containing statements given by Jill Barclay, Jackie Barclay, Harvell, Young, and Donzetta Clay.[6]   *Id.* ¶ 104.   The first of these reports details a phone call Jill Barclay made to police in which she admitted having seen Harvell at a mall in Indianapolis.   She believed that Harvell was looking at her (and, that same day,

---

[6] Donzetta Clay did not testify at trial.   Compl. ¶ 104.

at her license plate) and "was positive he was one of the gunmen" in the McCloud shooting.  *Id.* ¶¶ 105-07.   Also contained in the first report is a description of the photo lineup presented to Jill Barclay, Jackie Barclay, and Young—all of whom "positively . . . and without hesitation identified Harvell as the gunman on the driver's side of McCloud's car[] and said he wore brown clothing."  *Id.* ¶ 109.   The second police report discusses an in-person lineup presented to Jill Barclay, Jackie Barclay, Nunn, and Clay.   From that lineup, Jill Barclay, Jackie Barclay, and Clay selected Harvell as the shooter, and Nunn selected an individual who was not a suspect.  *Id.* ¶¶ 110-11.   The third police report includes a statement by Harvell in which he acknowledges having talked to one of Mr. Goudy's alibi witnesses.   According to Harvell, this witness indicated that she "want[ed] to change her story."  *Id.* ¶ 112.

On December 21, 1995, a jury convicted Mr. Goudy of murder, attempted murder, attempted robbery, and attempted carjacking in connection with the McCloud shooting. Mr. Goudy filed a motion to vacate the judgment and obtain a new trial, which the trial court denied on January 17, 1996.   He received consecutive sentences of sixty years for the murder charge and fifty years for the attempted murder charge, both to be served in the Indiana Department of Correction.   Compl. ¶¶ 117-19.   Additionally, he was sentenced concurrently to fifty years for the attempted robbery charge and twenty years for the attempted carjacking charge.  *Goudy v. State*, 689 N.E.2d 686, 699 (Ind. 1997).   The Indiana Supreme Court eventually vacated his conviction and sentence for the attempted carjacking charge in 1997.  *Id.*

7

Not long after Mr. Goudy began serving his sentence, Cummings prosecuted Lee for crimes arising out of the same criminal transaction.   During Lee's October 1997 jury trial, Lee's attorney unearthed the three above-mentioned police reports and brought them to the attention of Mr. Goudy's attorney.   *Id.* ¶¶ 100-02.   This was the first Mr. Goudy had heard of the existence and content of such exculpatory evidence.   His direct appeal was pending in the Indiana Supreme Court at the time and he attempted to use the evidence on direct appeal and subsequently in a post-conviction petition in the sentencing court, but the petition was denied all the way to the Indiana Supreme Court level.   *Id.* ¶¶ 122-23.

Mr. Goudy subsequently filed a federal *habeus corpus* petition in the Southern District of Indiana.   The district court originally denied the petition and Mr. Goudy appealed to the Seventh Circuit Court of Appeals.   On May 3, 2010, the Court of Appeals reversed the district court's decision, holding that Mr. Goudy's constitutional rights were violated and that he did not receive a fair trial and remanded the case to the district court with instructions to grant his request for a writ of *habeas corpus* and to order the state to re-try him or release him within 120 days.   *Goudy v. Basinger*, 604 F.3d 394 (7th Cir. 2010).   The Southern District of Indiana, on remand, granted Mr. Goudy's *habeas corpus* petition, vacated the re-filed case against him, and ordered him released.   Compl. ¶ 127. Mr. Goudy was released from prison on September 3, 2010.   *Id.* ¶ 129.   The special prosecutor ultimately decided to dismiss the re-filed case on January 13, 2012.   *Id.* ¶ 132.

Mr. Goudy's Complaint, filed February 6, 2012, contains a variety of federal and state claims.   His federal claims, which all allege due process violations by Cummings and

8

Napier in contravention of 42 U.S.C. § 1983, are as follows:   Count I, *Brady* doctrine violations; Count II, unduly suggestive identification procedures; Count III, malicious prosecution; and Count VII, conspiracy.   His state claims against Cummings, Napier, and the City of Anderson are:   Count IV, malicious prosecution; and Count V, intentional infliction of emotional distress.   Presumably due to typographical error, Mr. Goudy's remaining state claims are both designated Count VI.   The first Count VI, asserted against Cummings and the State of Indiana, alleges intentional infliction of emotional distress; the second Count VI, asserted against the City of Anderson, is an Illinois claim for indemnification.

## **Legal Analysis**

### I.  **Standard of Review**

The State of Indiana and Prosecutor Cummings have filed their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).   In this procedural context, the Court must accept as true all well-pled factual allegations in the complaint and draw all ensuing inferences in favor of the non-movant.   *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009).   Nevertheless, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and its "[f]actual allegations must . . . raise a right to relief above the speculative level."   *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted).   The complaint must therefore include "enough facts to state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2).   Stated otherwise, a

facially plausible complaint is one which permits "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

By comparison, the City Defendants' motion for partial judgment on the pleadings is governed by Federal Rule of Civil Procedure 12(c).   This rule allows a party to move for judgment "[a]fter the pleadings are closed[,] but early enough not to delay trial."   Fed. R. Civ. P. 12(c); *Riggins v. Walter*, 279 F.3d 422, 428 (7th Cir. 1995).   A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss pursuant to Rule 12(b)(6), which necessarily implicates Rule 8(a) as well.   *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007) (noting Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief").   If the parties present matters outside the pleadings on a Rule 12(c) motion, the Court will treat the motion as one for summary judgment under Rule 56.   Fed. R. Civ. P. 12(d). However, judicially noticed "historical documents, documents contained in the public record, and reports of administrative bodies" may be considered at this stage of litigation without converting the motion into a motion for summary judgment.   *In re Salem*, 465 F.3d 767, 771 (7th Cir. 2006).   All uncontested allegations to which the parties had an opportunity to respond must be accepted as true.   *Alexander v. City of Chi.*, 994 F.2d 333, 335 (7th Cir. 1993).

## II.   Motion to Dismiss

### A.   Statute of Limitations

In his opening brief, Cummings argued that Mr. Goudy's federal claims for false arrest/false imprisonment and for federal due process violations relating to an unfair trial are barred by the applicable statute of limitations.   However, Mr. Goudy has not brought a claim for false arrest/false imprisonment and the accrual date for his claim alleging *Brady* violations is the date when his conviction was vacated or set aside.   *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008).   Although in this case it is not entirely clear which date should be considered the date the statute of limitations began to run (e.g., May 3, 2010, the date the Seventh Circuit ordered the district court to grant his habeas petition; July 12, 2010, the date the federal district court granted the habeas corpus petition; September 3, 2010, the date Mr. Goudy was released from custody; or January 13, 2012, the date the criminal charges were dismissed against Mr. Goudy), each of the possible operative dates falls within the applicable two-year statute of limitations.   Thus, as Cummings apparently now concedes, Mr. Goudy's federal claims were timely filed.[7]

## B.   Absolute Immunity

Cummings next argues that none of Mr. Goudy's federal and state claims against him in his individual capacity as Madison County Prosecutor state an actionable claim

---

[7] Although Cummings concedes that Mr. Goudy's claim for alleged *Brady* violations falls within the applicable statute of limitations, Cummings argues that it is unclear whether Mr. Goudy's claim for alleged *Brady* violations and his claim for malicious prosecution are based on the same alleged actions taken by Cummings.   Cummings contends that Mr. Goudy has not specifically alleged which of his actions as a prosecutor would support a malicious prosecution claims separate of the alleged *Brady* violations, and thus, Mr. Goudy's malicious prosecution claim must fail. Alternatively, Cummings argues that Goudy's federal malicious prosecution claim must be dismissed because a state law remedy exists.   Because these arguments have nothing to do with whether Mr. Goudy's claims fall within the applicable statute of limitations, we address them fully elsewhere in our ruling.

because his alleged misconduct is protected by the doctrine of absolute prosecutorial immunity.   Mr. Goudy concedes that his state law claim for intentional infliction of emotional distress should be dismissed based on Indiana's prosecutorial immunity doctrine; thus, Cummings's motion to dismiss is granted as to that claim.   Mr. Goudy contends however, that the more narrow federal immunity provided to prosecutors does not shield Cummings from liability on his claims brought pursuant to § 1983.

Our Supreme Court first discussed the prosecutorial immunity doctrine in the context of § 1983 lawsuits in *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976), concluding that "the same considerations of public policy that underlie the common-law rule [of prosecutorial immunity] likewise countenance absolute immunity under § 1983." However, the Court curtailed its ruling by "hold[ing] only that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."   *Imbler*, 424 U.S. at 431.   Whether or not a prosecutor's actions fall within the scope of his official duties depends upon its function.   *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009).   As the Seventh Circuit explained in *Fields v. Wharrie*, 672 F.3d 505 (7th Cir. 2012), this inquiry acknowledges the wide scope of prosecutorial job responsibilities, to wit:

> [A] prosecutor has job responsibilities that are not prosecutorial in nature.   There exists a difference between [his] advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial . . . and [his] detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested. . . . Actions and decisions made in accordance with the latter set of responsibilities entitle him only to the qualified immunity granted to the police and other members of the prosecution team who

share those duties.

*Id.* at 511 (internal citations and quotation marks omitted).

Our starting point, therefore, is the general rule that absolute immunity does not protect conduct that is investigative or administrative, or which does not involve a prosecutor acting as an officer of the court.   *Van de Kamp*, 555 U.S. at 342.   However, we are also mindful that "a certain kind of administrative obligation—a kind that itself is directly connected with the conduct of a trial"—may confer absolute immunity.   *Id.* at 344 (distinguishing between administrative actions shielded as prosecutorial functions, like training prosecutors on properly disclosing to the defense material evidence, and administrative actions that are not protected under the doctrine, such as workplace hiring and facilities management).   The protection of absolute prosecutorial immunity "endeavors to preserve the function of the public office, and, thus, encompasses any action directly relevant to a prosecutor's ability to conduct a trial."   *Fields*, 672 F.3d at 510 (internal citations omitted).[8]   Defendant prosecutors have the burden in § 1983 actions of showing that absolute immunity is justified in their particular case.   *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).

Here, Defendant Cummings argues that he is entitled to absolute immunity for the § 1983 claims brought against him in his individual capacity as a Madison County Prosecutor alleging a due process *Brady* violation in connection with Cummings's

---

[8] Absolute prosecutorial immunity "protects judicial resources by preventing the retrial of every criminal offense in a new forum, as well as encourages prosecutors to volunteer for and vigorously perform the job by shielding them from frivolous suits and the corresponding litigation costs."   *Fields*, 672 F.3d at 511 n.1 (citation omitted).

withholding of exculpatory evidence, a malicious prosecution claim, and a claim that Cummings conspired with Detective Napier and other police officers and prosecutors to frame Mr. Goudy.   We address each of these claims in turn.

### 1. *Brady* Claim

Mr. Goudy alleges that, as a police officer, Cummings withheld exculpatory police reports from the original prosecutor, and then, after the original charges were dropped and Cummings was subsequently elected as prosecutor, he continued to withhold that evidence in order to refile the charges and manufacture a false case against Mr. Goudy.   It is clear that once formal criminal proceedings were reinitiated against Mr. Goudy, Cummings's failure to turn over the three police reports cannot subject him to damages because at that point, his immunity is absolute.   *Fields*, 672 F.3d at 513 ("Once a defendant is indicted, the disclosure obligation and the due process in question correspond to his trial rights, and a prosecutor's failure to uphold that obligation, in the form of suppression, coincides with his prosecutorial functions.").   Thus, any claim against Cummings alleging a *Brady* violation based on suppression of evidence once formal proceedings against Mr. Goudy recommenced is barred and the motion to dismiss is granted as to any such claims.[9]

However, at this point, it is not clear what actions Cummings took from the time he

---

[9]  Although Cummings was forced to recuse as prosecutor before Mr. Goudy's case went to trial, Mr. Goudy concedes that under the current state of Seventh Circuit law, this fact is insufficient to defeat Cummings's claim of absolute immunity.   *See Fields*, 672 F.3d at 516 (holding that original prosecutor, although not directly involved in the plaintiff's appeal or retrial, was still entitled to absolute immunity because he "was not fully divorced from [plaintiff's] judicial proceedings until all direct judicial remedies were exhausted and [plaintiff's] conviction became final").

became a prosecutor up to the point of the issuance of the second arrest warrant.   If

Cummings misrepresented the nature of the government's evidence against Mr. Goudy

during that time period, depending on the context in which he did so, he may have been

performing a non-advocative function.   *See, e.g., Kalina v. Fletcher*, 522 U.S. 118, 129-31

(1997) (no absolute immunity for prosecutor who represented under penalty of perjury the

truth of facts supporting probable cause for arrest warrant); *Buckley*, 509 U.S. at 274

(denying absolute immunity to prosecutors investigating evidence before convening

special grand jury because "[a] prosecutor neither is, nor should consider himself to be, an

advocate before he has probable cause to have anyone arrested").   Because the facts are

not sufficiently fleshed out at this stage in the litigation to enable us to make a definitive

determination on this issue, we cannot conclude at this point that Cummings is entitled to

absolute immunity for withholding exculpatory evidence before he refiled the charges

against Mr. Goudy.   The Seventh Circuit has recognized that, given that an immunity

defense usually depends on the facts of the case, dismissal at the pleading stage may in

some cases be inappropriate.   *Alvarado v. Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001).

This is especially true in this case, given the unique circumstances at issue, to wit, the fact

that Cummings began as the lead detective on Mr. Goudy's case and was thus intimately

involved in all investigatory stages of the case before becoming prosecutor and deciding to

refile charges.   At this point, it is simply unclear the exact actions taken by Cummings

after being elected prosecutor up to the point at which formal criminal proceedings were

reinitiated against Mr. Goudy.

### 2.  Malicious Prosecution Claim

Defendant Cummings maintains that he is entitled to absolute immunity for Mr. Goudy's malicious prosecution claim brought pursuant to § 1983.   However, because we dismiss Mr. Goudy's federal malicious prosecution claim on other grounds explained in detail below, we need not address whether Cummings might alternatively be protected by absolute immunity.

### 3.  Conspiracy Claim

Mr. Goudy also alleges that Cummings and Napier engaged in a § 1983 conspiracy to withhold exculpatory and impeaching evidence from Goudy and his attorney and to engage in unconstitutional identification procedures in order to frame Goudy and deny him a fair trial.   Cummings argues that he is entitled to absolute prosecutorial immunity from the conspiracy charge because prosecutorial immunity applies to prosecutorial acts committed in conspiracy with non-immune persons.   *Peña v. Mattox*, 84 F.3d 894, 897 (7th Cir. 1996) ("It would not do to strip a … prosecutor of his immunity merely because he conspired with nonimmune persons.").   However, a prosecutor is not absolutely immune when the underlying violation supporting § 1983 liability is conduct outside the prosecutor's role.   *Id.* ("[Absolute immunity] does not extend to a case in which the conduct of the prosecutor's coconspirators includes acts wholly unrelated to the prosecutor's role.").   Thus, courts have held that "a prosecutor involved in a conspiracy to target a criminal suspect is not protected by absolute immunity…." *Hill v. City of Chicago*, No. 06 C 6772, 2009 WL 174994, at *11 (N.D. Ill. Jan. 26, 2009) (citing *Johnson v.*

*Dossey*, 515 F.3d 778, 783 (7th Cir. 2008)).

At this early stage in the litigation, Mr. Goudy has alleged sufficient facts for the court to conclude that it is possible that a conspiracy could have been formed which included Cummings in his capacity as prosecutor acting in an investigatory rather than prosecutorial role.   Again, further factual development will be required, but we cannot conclude at this point that Cummings is protected by absolute immunity for the § 1983 conspiracy alleged by Mr. Goudy.

### C.     Sovereign Immunity

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State.   U.S. CONST. amend. XI.   "An unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citation omitted). It is well established that "in the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."  *Id.* (citations omitted).   The State has not consented to suit nor has Congress abrogated the Eleventh Amendment immunity in this case.

Mr. Goudy argues that the Eleventh Amendment has no application to the case at bar, however, because the State is not being sued as a substantive party but rather only for indemnification purposes.   This argument has been clearly rejected by the Seventh Circuit

17

Court of Appeals.   In *Stoner v. Wisconsin Department of Agriculture, Trade and Consumer Protection*, 50 F.3d 481 (7th Cir. 1995), the Court of Appeals addressed this issue, observing that just as it would be absurd if a state's promise to indemnify state employees for any damages awarded in a § 1983 case put its employees beyond the reach of such a lawsuit, "[i]t would be equally absurd if such indemnification statutes served automatically to abrogate Eleventh Amendment immunity by allowing states to be joined as indemnitors. Untenable also; this argument fails."   *Id.* at 483.   Thus, any claim against the State is barred and must be dismissed.

### III.   Motion for Partial Judgment on the Pleadings

The City Defendants have moved for judgment on the pleadings with respect to three counts in Mr. Goudy's Complaint:   the *Brady* violation claim, the federal malicious prosecution claim, and the Indiana state law malicious prosecution claim.   Mr. Goudy now concedes that the City Defendants are immune from any state law claim for malicious prosecution under the Indiana Tort Claims Act.   *See, e.g.*, *Butt v. McEvoy*, 669 N.E.2d 1015, 1018 (Ind. Ct. App. 1996).   Accordingly, Mr. Goudy's claim for malicious prosecution brought under Indiana law is dismissed.   We address in turn below the remaining two claims that are the subject of Defendants' motion for judgment on the pleadings.

#### A.   Federal Malicious Prosecution Claim

Count III represents Mr. Goudy's attempt to state a federal cause of action for malicious prosecution arising from the Due Process Clause of the 14th Amendment and

18

pursuant to 42 U.S.C. § 1983.   According to the City Defendants, this claim is not

cognizable in federal court because Mr. Goudy could have availed himself of state law

remedies.   To be sure, the Seventh Circuit has held that a § 1983 malicious prosecution

claim cannot stand if state law provides a remedy.   *Newsome v. McCabe*, 256 F.3d 747,

750-51 (7th Cir. 2001).   Although Mr. Goudy does not dispute the holding in *Newsome*

(indeed, he argues for its "straightforward" application), he contends that his claim should

survive because "it [is] clear that there is no state law remedy available to [him]."   Pl.'s

Resp. at 10.   Mr. Goudy's argument is based on the fact that, while Indiana law provides

for a claim of malicious prosecution, in his case such a claim is barred by official

immunity.   IND. CODE § 34-13-3-3(8).   Thus, he contends that, because the State of

Indiana has granted its officials immunity from malicious prosecution claims, there are no

state law remedies available to him and his due process claim is therefore cognizable under

§ 1983.

This issue has been addressed by our colleagues in this District on a few recent

occasions and they have uniformly found the argument advanced by Mr. Goudy "without

merit as the 'existence of immunity for certain types of claims does not render a State law

remedy constitutionally defective."   *Serino v. Hensley*, No. 3:12-cv-40-RLY-WGH, 2012

WL 6025751, at *4 (S.D. Ind. Dec. 4, 2012) (quoting *Hart v. Mannina*, No.

1:10-cv-1691-WTL-MJD, 2012 WL 188055, at *6 (S.D. Ind. Jan. 23, 2012)); *accord*

*Julian v. Hanna*, No. 1:11-cv-1536-TWP-DML, 2013 WL 64516, at *4 (S.D. Ind. Jan. 4,

2013).   *See also Daniels v. Williams*, 474 U.S. 327, 342 (1986) (Stevens, J., concurring)

19

("[T]he mere fact that a State elects to provide some of its agents with a sovereign immunity defense in certain cases does not justify the conclusion that its remedial system is constitutionally inadequate.").   In such cases, due process is "afforded by way of the legislative process ultimately granting immunity."   *Hart*, 2012 WL 188055, at *7 (citations omitted).   In the absence of clear Seventh Circuit precedent directing otherwise,[10] we adopt this same reasoning here and therefore dismiss Plaintiff's federal malicious prosecution claim.

### B.   *Brady* Violation

Mr. Goudy asserts that the government, through Detectives Cummings and Napier, unlawfully withheld exculpatory evidence in contravention of *Brady v. Maryland*, 373 U.S. 83 (1963).   Pursuant to *Brady*, "'the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Moore v. Casperson*, 345 F.3d 474, 492-93 (7th Cir. 2003) (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)).   Although the duty under *Brady* to disclose exculpatory and impeaching evidence to a criminal defendant rests ultimately with the prosecutor, police officers who investigate crimes have a *Brady* obligation as well.   Because a prosecutor can fulfill his *Brady* obligations only if he knows of the existence of potentially exculpatory or impeaching evidence, police officers have a duty to disclose such information to the

---

[10] This issue arose before the Seventh Circuit Court of Appeals in *Tully v. Barada*, 599 F.3d 591 (7th Cir. 2010), but the court declined to "decide whether Indiana provides [plaintiff] an adequate post-deprivation remedy despite that it also recognizes an affirmative immunity defense for governmental actors acting within the scope of their employment."   *Id.* 595.

prosecutor.   *E.g.*, *Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007) ("[The *Brady*]

obligation extends to police officers, insofar as they must turn over potentially exculpatory

evidence when they turn over investigative files to the prosecution."); *Newsome*, 256 F.3d

at 752 ("If officers are not candid with prosecutors, then the prosecutors' decisions –

although vital to the causal chain in a but-for sense – are not the important locus of

action.").

　　　In their motion for judgment on the pleadings, Defendants Cummings and Napier,

in their individual capacities as Anderson police detectives, and the City of Anderson

(collectively "the City Defendants") argue that Cummings and Napier are entitled to either

absolute or qualified immune from monetary liability for Mr. Goudy's *Brady* claims

because, even if they failed to disclose the three police reports at issue to the prosecutor,

they acted in accordance with a facially valid court order.   It is true that public officials

may be absolutely immune from monetary liability under § 1983 when acting pursuant to a

facially valid court order or judicial directive.   *See, e.g.*, *Kincaid v. Vail*, 969 F.2d 594,

601 (7th Cir. 1992) (collecting cases). There is "general agreement that court officials …

who act at the behest of a judge or pursuant to a court order are entitled to absolute

quasi-judicial immunity from suit as to those actions…."   *Forte v. Sullivan*, 935 F.2d 1, 3

(1st Cir. 1991).   However, for the reasons detailed below, we are not persuaded that

Defendants Cummings and Napier are protected by absolute quasi-judicial immunity here.

　　　At the time Mr. Goudy was first charged with the murder of Mr. McCloud, the

original prosecutor on the case, William Lawler, provided to Mr. Goudy's counsel copies

of all police reports through March 21, 1994.   As noted above, those charges were
dismissed on May 16, 1994.   Defendant Cummings began his term as the Madison County
Prosecutor in January 1995 and re-filed the charges against Mr. Goudy on April 7, 1995.
On October 17, 1995, Mr. Goudy filed a motion for additional discovery, seeking, *inter
alia*, "[c]opies of all police reports concerning any investigative activities which have been
conducted since the 21st day of March, 1994 with regard to the incident alleged in the
charging."   Defs.' Exh. B.   The trial court held a hearing on the motion and, on October
23, 1995, issued an order ruling in relevant part that: "The Court will not order the State of
Indiana to turn over police reports and denies said request."   Defs.' Exh. C.   Mr. Goudy
responded to this ruling by filing a motion for *in camera* review of the police reports to
determine whether they contained exculpatory material or were otherwise discoverable.
Defs.' Exh. D.   On November 22, 1995, the trial court summarily denied the motion.
Defs.' Exh. E ("The Court affirms its prior ruling herein with no amendments.").

Based on these facts, the City Defendants claim that "the trial court ordered (twice)
that the [three exculpatory police reports] did not have to be provided to Goudy …."
Def.'s Br. at 6.   We disagree.   Mr. Goudy never alleged in his request that specific
documents of an exculpatory nature were being withheld nor did the trial court rule as
Defendants claim that exculpatory material did not have to be provided to Mr. Goudy.
Instead, the trial court merely denied Mr. Goudy's blanket request that he be provided all
police reports prepared after a certain date and further declined to conduct a review of those
police reports to determine whether there was information in any of the reports that was

22

discoverable.   In no way can the trial court's orders be construed to have clearly and definitively authorized the withholding of *Brady* material as is required to successfully invoke the quasi-judicial immunity doctrine.   *See Schneider v. County of Will*, 366 Fed. App'x 683, 686 (7th Cir. 2010) ("Although the contours of quasi-judicial immunity remain unsettled, courts regularly require nonjudicial actors invoking the doctrine to demonstrate that their acts were directly and explicitly ordered by a judge.") (citing *Stein v. Disciplinary Bd. of Supreme Court of N.M.*, 520 F.3d 1183, 1191 (10th Cir. 2008); *Richman v. Sheahan*, 270 F.3d 430, 437-38 (7th Cir. 2001); *Kincaid*, 969 F.2d at 601).

The City Defendants also argue that they are entitled to qualified immunity.   Under the doctrine of qualified immunity, public officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Thus, "[d]efeating qualified immunity requires (1) conduct violating the plaintiff's constitutional or statutory rights that is (2) clearly established at the time of the violation such that a 'reasonable official would understand that what he is doing violates that right.'" *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013) (quoting *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000)).

Clearly, withholding exculpatory or impeaching evidence is conduct that violates a plaintiff's constitutional rights.   *Brady*, 373 U.S. at 87.   The City Defendants argue that Detectives Cummings and Napier are nevertheless entitled to qualified immunity because

the trial court ultimately shielded the documents from disclosure.   However, as discussed
above, while the trial court denied Mr. Goudy's request for the disclosure of all police
reports after a certain date, it did not rule that the government did not have to produce
exculpatory evidence if any was contained in those reports.   To the contrary, it was clearly
established in 1995 as it remains today that, although investigative police reports are
considered protected as the work product of the prosecutor and thus are not discoverable
unless the privilege has been waived, (which is the ruling the state trial court made), police
officers and prosecutors still have an independent duty to comply with their *Brady*
obligations as to exculpatory or impeaching evidence contained within such reports.   *See*
*State ex rel. Keaton v. Circuit Court of Rush County*, 475 N.E.2d 1146, 1147-48 (Ind.
1985) (holding that the prosecution does not have to tender a copy of police reports to the
defense upon a timely work product-privilege objection, but recognizing the "affirmative
duty to disclose exculpatory information not otherwise revealed through discovery").
Accordingly, the City Defendants are not entitled to qualified immunity for their alleged
failure to disclose *Brady* material to the prosecutor in Mr. Goudy's case.

Alternatively, the City Defendants argue that any obligation on the part of
Detectives Cummings and Napier to disclose the police reports was discharged when
Cummings became prosecutor because the only *Brady* obligation police officers have is to
disclose exculpatory information to the prosecutor and "[w]hen Prosecutor Cummings
took office, he had a complete and thorough knowledge of the investigation into Goudy's
involvement in the McCloud murder, including knowledge of the three reports at issue

because of his role as [detective]."   Defs.' Br. at 9.   In other words, the City Defendants contend that Cummings had no obligation to disclose the police reports to himself once he became prosecutor because his knowledge from his time as an investigator on the case was imputed to his new office thereby curing any failure by Detectives Cummings and Napier in their role as detectives.

It is true that for purposes of § 1983 liability, "[t]he causal link between a police officer's [withholding of evidence] and the victim's injury may be broken if that police officer tells a prosecuting attorney before trial about the [withheld evidence]."   *Whitlock v. Brueggemann*, 682 F.3d 567, 583 (7th Cir. 2012).   In such circumstances, a prosecutor's decision to continue to withhold exculpatory evidence may sometimes constitute a "superseding or supervening cause of the violation." *Id.* at 584.   However, this does not help Cummings in this case because "[o]ne's own conduct cannot be an intervening cause sufficient to defeat a finding of causation."   *Id.*   Here, as in *Whitlock*, "there is no supervening cause that breaks the chain from [Cumming's withholding of exculpatory evidence] as an investigator to the constitutional violation."   *Id.*

Because we find that Detectives Cummings and Napier are not entitled to either absolute or qualified immunity in connection with their alleged failure to disclose the three police reports to the prosecutor and that Cummings's subsequent election as prosecutor did not cure their alleged failure to comply with their *Brady* obligations as detectives, Mr. Goudy's *Brady* claims against the City Defendants survive Defendants' motion for judgment on the pleadings.

**IV.     Conclusion**

For the foregoing reasons, we <u>GRANT IN PART</u> and <u>DENY IN PART</u> Defendants'

Motion to Dismiss and <u>GRANT IN PART</u> and <u>DENY IN PART</u> Defendants' Motion for

Judgment on the Pleadings.    The case will proceed accordingly.

IT IS SO ORDERED.


Date:    _____09/30/2013_____

                                                                   _Sarah Evans Barker_____
                                                                   SARAH EVANS BARKER, JUDGE
                                                                   United States District Court
                                                                   Southern District of Indiana

26

Copies to:

Richard Bruce Walker
walkerlaw8@gmail.com

Cory Christian Voight
COOTS HENKE & WHEELER, P.C.
cvoight@chwlaw.com

Anthony W. Overholt
FROST BROWN TODD LLC
aoverholt@fbtlaw.com

Heather M. Wyatt
OFFICE OF THE INDIANA ATTORNEY GENERAL
heather.wyatt@atg.in.gov

Betsy M. Isenberg
OFFICE OF THE INDIANA ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov

Blake Wolfe Horwitz
THE BLAKE HORWITZ LAW FIRM
bhorwitz@bhlfattorneys.com

Leah Selinger
THE BLAKE HORWITZ LAW FIRM
lselinger@bhlfattorneys.com

Richard Dvorak
THE LAW OFFICES OF RICHARD DVORAK
richard_dvorak@civilrightsdefenders.com